UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALEJANDRA BADILLO,<br><br>                    Plaintiff,<br><br>          v.<br><br>LO SEWING, INC., SL SEWING INC., MARIA GALLEGOS, SALIM ABOUHAMRA a/k/a SALIM ABOHAMRA a/k/a SALIM HAMRA, and RAFOUL ABOUHAMRA, a/k/a RAFOUL ABOHAMRA a/k/a RAFOUL ABOU HAMRA<br><br>                    Defendants. | Case No.: 24-cv-02847-NRM-JAM |

**<u>PLAINTIFF'S MEMORANDUM OF LAW</u>**
**<u>IN SUPPORT OF HER MOTION FOR A DEFAULT JUDGMENT</u>**

Michael                    Taubenfeld
(michael@fishertaubenfeld.com)
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
Facsimile: (212) 505-2001

Elissa Devins (devins@nylag.org)
NEW YORK LEGAL ASSISTANCE
GROUP
100 Pearl St 19th Fl.
New York, NY 10004
Phone: (212) 613-5000

*ATTORNEYS FOR PLAINTIFF*

## PRELIMINARY STATEMENT

Plaintiff Alejandra Badillo brings this action against her employers Lo Sewing, Inc. ("Lo Sewing"), SL Sewing Inc. ("SL Sewing") (collectively, "Corporate Defendants"), Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra ("Defendant Abohamra"), and Maria Gallegos ("Defendant Gallegos") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), including Articles 6 and 19 thereof.

Plaintiff is a garment worker employed at Defendants' Brooklyn sewing facility. Defendants paid Plaintiff by the piece rather than by the hour, causing her to be systematically underpaid below the applicable federal and New York minimum wage. Plaintiff worked more than forty hours per week without any overtime compensation. Defendants paid Plaintiff on an irregular basis that frequently violated NYLL § 191's weekly-pay requirement for manual workers, and Defendants never provided the wage notices or pay stubs required under NYLL § 195. To conceal these violations, Defendant Salim required Plaintiff to sign fraudulent time cards falsely indicating that she was paid at the minimum wage.

Despite being properly served with the Complaint, First Amended Complaint, and Second Amended Complaint, none of the Defendants has appeared, answered, or otherwise responded. On April 6, 2026, the Clerk of Court entered the default of Defendants Lo Sewing, Inc., SL Sewing Inc., Maria Gallegos, and Salim Abouhamra pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 46.) Plaintiff now moves for a default judgment against those four Defendants, and respectfully requests that this Court award unpaid minimum wages, unpaid overtime wages, liquidated damages, NYLL § 195 statutory damages, NYLL § 191 damages for untimely payment, pre-judgment interest, and attorneys' fees and costs.

1

**STATEMENT OF FACTS**

### I. Background

Defendant Lo Sewing, Inc. ("Lo Sewing") is a garment factory located in Brooklyn, New York that works with other companies in the fashion industry to produce bulk garment manufacturing, pattern cutting, industrial sewing, and final assembly. (Second Amended Compl., ECF No. 29, ¶ 13; Badillo Decl. ¶ 2.). Defendant SL Sewing Inc. ("SL Sewing") was incorporated in January 2023. Lo Sewing was dissolved in January 2024. Plaintiff's work circumstances did not change after SL Sewing's incorporation: she continued to perform the same work, subject to the same pay structure, at the same location, using the same equipment, and managed by the same individuals. SL Sewing is alleged to be an integrated enterprise with, and successor to, Lo Sewing. Although Lo Sewing was formally dissolved, Plaintiff has continued to refer to her employer as "Lo Sewing," consistent with the alleged continuity between the two entities rather than any actual change in her working conditions. (Second Amended Compl. ¶¶ 19–20, 22–35; Decl. ¶ 5.)

Defendant Salim Abouhamra is the owner of Lo Sewing and, at all relevant times, has held supervisory authority over Plaintiff, including setting her pay, her schedule (since she filed suit in April 2024), and assigning her tasks; he has the power to hire and fire employees. (Second Amended Compl. ¶ 37; Decl. ¶¶ 4, 6.)

Defendant Maria Gallegos hired Plaintiff and has been her supervisor since Plaintiff first started working at Lo Sewing in 2013. Defendant Gallegos is responsible for assigning Plaintiff's work, assesses the quality of her work product, otherwise controls the terms and conditions of her work, and has the power to take disciplinary action against her. Since Plaintiff filed this lawsuit, Defendant Gallegos has worked together with Defendant Abouhamra to assign Plaintiff's tasks. (Second Amended Compl. ¶ 38; Decl. ¶ 7.)

### II. Ms. Badillo's Employment and Work Schedule

Ms. Badillo was first hired by Defendants in September 2013. She left Lo Sewing in 2017 because Defendants were not paying her and she needed income to support her children. She resumed work at Lo Sewing on February 16, 2020. She is a current employee of Defendants. (Second Amended Compl. ¶¶ 10–11; Decl. ¶ 3.)

Shortly after Ms. Badillo returned to work in February 2020, Lo Sewing closed for approximately four months due to the COVID-19 pandemic. She returned to work at the factory in approximately August 2020. (Decl. ¶ 3.) Her job responsibilities at Lo Sewing include sewing and altering clothing. (Decl. ¶ 8.) From 2020 until she filed this lawsuit in April 2024, Ms. Badillo mostly worked between 70 and 77 hours per week, seven days a week (Monday through Sunday), typically starting at 8:00 or 9:00 a.m. and ending at 7:00 p.m., with a half-hour daily lunch break. Her hours typically fluctuated only around the December holidays, when they sometimes lowered to about 40 hours per week. (Second Amended Compl. ¶ 42; Decl. ¶¶ 9–10.)

After Ms. Badillo filed this lawsuit in April 2024 and until October 2025, her hours were reduced: she typically worked Monday through Friday, 8:00 or 9:00 a.m. to 7:00 p.m., and approximately once a month also worked Saturday and Sunday. (Decl. ¶ 11.) In approximately October 2025, Defendant Abouhamra told her there was no more work for her, and she was out of work until approximately February 2026. (Decl. ¶ 12.) From February 2026 through approximately early June 2026, she worked Monday through Friday, but her hours were reduced because she was often sent home around 2:00 or 3:00 p.m. (Decl. ¶ 13.) Beginning approximately June 2026, her hours were reduced further: Defendant Abouhamra told her there was not much work, and she worked only two or three days a week, for an average of 15 hours per week. (Decl. ¶ 14.) However,

3

for approximately the last two to three weeks before her declaration, her hours increased again, and she has worked Monday through Saturday, from 8:00 or 9:00 a.m. until 7:00 p.m. (Decl. ¶ 15.)

### III. Ms. Badillo's Pay

Ms. Badillo is not a salaried employee. Lo Sewing pays her per clothing item she finishes rather than by the hours she works. (Second Amend. Compl. ¶¶ 23, 46; Decl. ¶¶ 16, 23.) She is paid between 4 and 50 cents per item she finishes. For example, she has historically been paid 4 cents for affixing a clothing label, 4 cents for adding an elastic waistband, and 2 cents for affixing a bow. (Decl. ¶¶ 17, 20.) For example, she was recently given 300 pants to work on; the task took her approximately eight hours to complete, but she was paid only $36 for the job. (Decl. ¶¶ 18–19.) Plaintiff's weekly pay varies depending on how many pieces she completes and how many days she is called into work: she is paid anywhere between $190 and $350 per week, although it is rare that she earns $350 in a week. On average, her pay is about $200 per week. (Decl. ¶ 24.) Even though she works more than forty hours a week, Ms. Badillo has never received overtime pay for any hours worked in excess of forty in a given workweek. (Second Amend Compl. ¶ 43; Decl. ¶ 25.)

### IV. Untimely and Incomplete Payment

From the onset of her employment, Ms. Badillo has not been paid regularly. Lo Sewing has no standard payday, and she is typically paid every two to three weeks. On occasion, she has not received pay from Lo Sewing for over a month. (Second Amend. Compl. ¶¶ 44–45; Decl. ¶¶ 27–28.) For example, between November and December 2024, Ms. Badillo did not receive her pay for several weeks; it was only in mid-December 2024 that she received pay for approximately six weeks of work. (Decl. ¶ 29.)

### V. Timecard Fraud and Recordkeeping Violations

4

Throughout her time at Lo Sewing, Defendant Abouhamra has made Ms. Badillo and other workers punch timecards to reflect that they are paid minimum wage; in reality, these timecards are fraudulent, because Ms. Badillo and her coworkers are only paid per item they create or complete. Defendant Abouhamra has also made her sign these fraudulent timecards. Ms. Badillo is reluctant to refuse to sign these fraudulent cards for fear of not getting paid or suffering other retaliation. (Second Amend. Compl. ¶¶ 50–51, 53; Decl. ¶¶ 34–35.)

Defendants have paid Ms. Badillo primarily, though not exclusively, in cash: with the exception of approximately two occasions on which she received some of her pay by check, Lo Sewing has paid her throughout her employment in cash. (Decl. ¶ 36.)

To Ms. Badillo's knowledge, Defendant Abouhamra keeps all company records related to pay; however, she has never been provided with any wage statements during her time working at Lo Sewing, nor did she ever receive the notice required at hiring under NYLL § 195(1). (Second Amend. Compl. ¶¶ 54–55; Decl. ¶ 37.) Defendants' failure to provide her with this information deprived her of the ability to advocate for proper pay. Second Amend. Compl. ¶¶ 57-58.

## PROCEDURAL HISTORY

On April 16, 2024, Plaintiff filed her original Complaint against Defendants Lo Sewing, Inc., Maria Gallegos, and Selin Lnu. (ECF No. 1.) Defendant Lo Sewing, Inc. was served on May 6, 2024 through the New York Secretary of State pursuant to Business Corporation Law ("BCL") § 306, by delivery of two copies of the Summons and Complaint to an authorized agent at 1 Commerce Plaza, Albany, New York 12260. (ECF No. 8, filed May 14, 2024.)

Defendant Selin Lnu, now identified as Salim Abouhamra, was served on May 20, 2024, at 80 39th Street, Suite 301, Brooklyn, New York 11232, by delivering the Summons and Complaint to a co-worker of suitable age and discretion, followed by a mailing on May 21, 2024.

5

(ECF No. 10, filed May 28, 2024.) Defendant Maria Gallegos was served on May 20, 2024, at 80 39th Street, Suite 301, Brooklyn, New York 11232, by delivering the Summons and Complaint to a co-worker of suitable age and discretion, followed by a mailing on May 21, 2024. (ECF No. 11, filed May 28, 2024.)

On December 13, 2024, Plaintiff filed the First Amended Complaint (ECF No. 21), adding Defendant SL Sewing Inc. as a Corporate Defendant based on its integrated enterprise relationship with Lo Sewing and its status as Lo Sewing's successor. Defendant SL Sewing Inc. was thereafter served with process via the Secretary of State. (ECF No. 24.) On June 20, 2025, Plaintiff filed the Second Amended Complaint (ECF No. 29), adding Defendants Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra and Rafoul Abouhamra a/k/a Rafoul Abohamra a/k/a Rafoul Abou Hamra as individual defendants, and clarifying that "Selin Lnu" is Salim Abouhamra. Defendants Rafoul Abouhamra and Salim Abouhamra were thereafter served with process at the Corporate Defendants' business address by delivering the Summons and Second Amended Complaint to a co-worker of suitable age and discretion, followed by a mailing on August 14, 2025. (ECF No. 35, filed August 22, 2025) [1]

In addition to formal service, Plaintiff served Defendants with various orders of this Court by mail and text message. (see e.g. ECF No. 52,) Plaintiff's counsel also discussed this case with the son of Rafoul Abouhamra, who was a Defendant in this matter before Plaintiff voluntarily dismissed the claims against him without prejudice. Taubenfeld Decl at 5. The son is an attorney who advised Plaintiff's counsel that he was Salim Abouhamra's nephew.

Despite formal service and informal notifications of this lawsuit, no Defendant has filed an answer or otherwise moved in response to the original Complaint, First Amended Complaint, or

---

[1] Plaintiff voluntarily dismissed Defendant Rafoul Abouhamra without prejudice (ECF No. 42, filed November 5, 2025).

Second Amended Complaint. On April 6, 2026, the Clerk of Court entered the default of Defendant Lo Sewing, Inc. (with respect to the Complaint), Defendant Maria Gallegos (with respect to the Complaint), Defendant SL Sewing Inc. (with respect to the First and Second Amended Complaint), and Defendant Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra (with respect to the Second Amended Complaint), pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 46.)

## ARGUMENT

1. **Plaintiff is Entitled to a Default Judgment because Defendants have Failed to Answer or Otherwise Respond to the Summons and Complaints**

Federal Rule of Civil Procedure 55 and Local Civil Rule 55.2 entitle Plaintiff to default judgment against Defendants because they failed to appear, answer, or otherwise respond to the Summons and Complaint.

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Here, as the Affidavits of Service and Certificates of Default show, (ECF Nos. 8, 10, 11, 24, 46) show, Defendants failed to plead or otherwise defend. Defendants Lo Sewing and SL Sewing were properly served via the NYS Secretary of State as permitted by the Federal Rules of Civil Procedure, which incorporates New York State's rules, and allows service on the NYS Secretary of State. See ECF Nos. 8 and 24. Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18CIV126FBVMS, 2019 WL 3937126, at *3 (E.D.N.Y. July 3, 2019) (service via NYS Secretary of State effective under the FRCP). Individual Defendants Gallegos and Abouhamra were served through leave and mail service by leaving a copy of the appropriate Summons and Complaint with a coworker of suitable age and discretion at their place of business and then mailing a copy to their place of business, which complies with C.P.L.R. § 308(2). See ECF Nos. 10, 11, 24. Vazquez v. Wally's Deli & Grocery

7

Corp., 482 F. Supp. 3d 178, 183 (S.D.N.Y. 2020).[2]  Further, Plaintiff mailed and texted various orders to Defendants regarding their default, and Plaintiff's counsel discussed the case with Defendant Abouhamra's nephew. Taubenfeld Decl at 5. Defendants were then provided with ample opportunities and time to respond and failed to do so. As the result of the proper service, on April 6, 2026 (well after the time for the Defendants to answered had passed) the Clerk of the Court entered default against Defendants. See Entry of Default, ECF No. 46.

"Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b). . . ." Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 141 (E.D.N.Y. 2013); see also FED. R. CIV. P. 55 (b)(2). "A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." Joseph, 970 F. Supp. 2d at 141. "A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability." Id. The Second Circuit uses the following factors when determining whether to grant a default judgment: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Id. (internal citations omitted).

Here, Plaintiff is entitled to a default judgment because:

(1) Defendants defaulted willfully,

---

[2] Although Plaintiff did not serve each Defendant with a copy of each Complaint, she was not obligated to do so. Given that the original Defendants failed to appear, and Plaintiff did not add new claims in the Amended Complaints, Plaintiff was not required to serve them under Fed.R.Civ.P. 5(a)(2). De Curtis v. Ferrandina, 529 F. App'x 85, 86 (2d Cir. 2013) (service of amended complaint on defaulting defendants not required unless the amended complaint adds a new claim).  Allstate Ins. Co v. Yadgarov, No. 11-CV-6187 PKC VMS, 2014 WL 860019 at *6 (E.D.N.Y. Mar. 5, 2014) (plaintiff not required to serve Amended Complaint on defaulting Defendant when there were no new claims as to that defendant); Georg Neumann GmbH v. GoToToolz, Ltd., No. 23-CV-5808 (KAM)(LB), 2024 WL 3344013, at *2 n.1 (E.D.N.Y. July 9, 2024) (same).  Plaintiff properly served each Defendant with the operative complaint.

8

(2) Defendants have presented no defense to Plaintiff's claims, and

(3) denial of the motion would cause Plaintiff to suffer undue prejudice because her rights under

the Fair Labor Standards Act and New York Labor Law would remain unvindicated.

The willfulness factor weighs in favor of default judgment. Defendants received proper service and notice of this action, as well as informal notice through countless courts order served on them by mail and text message, yet they failed to appear or otherwise respond to the Summons and Complaints. Such "non-appearance and failure to respond to Plaintiff's Complaint … indicates willful conduct." Santana v. Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 291 n.2 (S.D.N.Y. 2016) (citing Indymac Bank, F.S.B. v. National Settlement Agency, Inc., No. 07CV6865–LTS–GWG, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)). Further, Defendants plainly have knowledge of this case. Plaintiff's counsel has also communicated with Defendant Abouhamra's nephew who is an employment attorney, about the case, which strongly indicates that Defendants are aware of this lawsuit. Finally, Plaintiff has served numerous orders on Defendants. Despite all of this notice, Defendants have failed to respond to this lawsuit at any point in the last two years. Defendants have therefore willfully defaulted.

The second factor, which is examining the presence or absence of any meritorious defense, also weighs in favor of default judgment. Courts are "unable to determine whether Defendants would be able to present any meritorious defense" when they fail to appear, Santana, 198 F. Supp. 3d at 291 n.2; see also Joseph, 970 F. at 143 ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations.") When no defense is presented, as here, "the allegations in the plaintiff's complaint are deemed admitted." Joseph, 970 F. at 143; see also Spring Homes LLC v. Rivera, No. 14-cv-6605, 2016 WL 5793196, at *4 (E.D.N.Y. Aug. 16, 2016) ("The court accepts as true

the well-pleaded allegations of the Complaint as to liability, drawing all reasonable inferences in favor of the plaintiff"); Finkel v. Robco Elec. Corp., No. 11-cv-2353, 2011 WL 3204603, at *2 (E.D.N.Y. July 27, 2011) ("Upon entry of default, a court should accept as true all factual allegations in the complaint, except those relating to damages"). This acceptance of Plaintiff's pled allegations is warranted when, as here, there are no "grounds for believing the defaults are based on a good-faith mistake or technicality." J & J Sports Prods., Inc. v. Ernest, No. 06-cv-1387, 2007 WL 2891063, at *2 (E.D.N.Y. Sept. 28, 2007). Further, Defendants have continued to pay Plaintiff improperly in the years since this case started. Defendants therefore cannot assert a meritorious defense.

The third and final factor of undue prejudice to the Plaintiff also weighs in favor of default judgment. Courts must consider "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Joseph, 970 F. Supp. 2d at 141. The level of prejudice to a plaintiff is high when, as here, "there are no additional steps available to secure relief in this Court." Id. at 148. Here, as in the Joseph case, "[w]ithout the entry of a default judgment, Plaintiff would be unable to recover for the claims adequately set forth in the Complaint." Id.; see also Santana, 198 F. Supp. 3d at 291 n.2 (noting that denial of default judgment would be prejudicial to the plaintiff because non-appearing defendants owed the plaintiff wages).

Because each factor weighs in favor of default judgment for Plaintiff, the Court should enter a default judgment.

## II. The Deemed-Admitted Allegations Present Valid Claims

Though the Complaint's facts are deemed admitted through Defendants' failure to respond, "the allegations set forth in the complaint" must also "state valid claims," Joseph, 970 F. Supp. 2d at 144. As outlined below, the Second Amended Complaint successfully pleads valid claims for:

10

failure to pay overtime wages under the Fair Labor Standards Act (FLSA) (first claim) and New York Labor Law (NYLL) (second claim), failure to pay New York State minimum wage (third claim), failure to pay FLSA minimum wage (fourth claim), failure to provide proper notice of pay and pay stubs under the NYLL (fifth claim), and failure to timely pay wages under NYLL (sixth claim).

### III.    Claims for Failure to Pay All Wages Owed

#### a.    Plaintiff is Covered by the FLSA and NYLL.

Plaintiff is covered by the FLSA.  Plaintiff has alleged that Defendants are an "[e]nterprise engaged in commerce or in the production of goods for commerce." Elvey, 2019 WL 3937126, at *5.  Specifically, she has alleged that Defendants earned more than $500,000 in gross revenue annually. See Second Amend Compl. ¶4. This allegation is sufficient to establish that Defendants earned the annual minimum of $500,000 to be covered by the FLSA.  Vazquez v. Wally's Deli & Grocery Corp., 482 F. Supp. 3d 178, 184 (S.D.N.Y. 2020) (stating the $500,000 minimum in the complaint is sufficient alone to establish enterprise coverage).  Further, Plaintiff used goods and materials that almost certainly traveled through commerce.  Second Amend Compl. ¶ 7.  And in any event, the Court may infer from the nature of Plaintiff's work and the fact that Defendants operate a sewing company that Plaintiff worked with goods that travelled through interstate commerce. Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding that it is "reasonable to infer" that at least some materials used by a restaurant moved through interstate commerce). Accordingly, Plaintiff has established that Defendants are an enterprise engaged in commerce and are therefore covered by the FLSA.  And because Plaintiff is covered by the FLSA, she is covered by the NYLL, because the "NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." Elvey, 2019 WL 3937126, at *6.

11

The FLSA has a maximum three-year statute of limitations if the employer's conduct is willful, but the NYLL permits Plaintiff to bring claims going back six years. Elvey, 2019 WL 3937126, at *8. Plaintiff has alleged that Defendants engaged in willful misconduct, which sufficient for a default coupled with Defendants' default. See Second Amend Compl. ¶¶ 23, 36, 54, 58 and 59; Luna v. Gon Way Constr., Inc., No. 16CIV1411ARRVMS, 2017 WL 835321, at *9 (E.D.N.Y. Feb. 14, 2017) ("By virtue of Defendants' default, combined with Plaintiffs' allegations that Defendants "willfully" violated the FLSA...the three-year statute of limitations applies to Plaintiffs' FLSA claims.") In any event, Plaintiff may recover under the NYLL for six years. Id.

### b. Defendants Violated the FLSA and NYLL by Not Paying Time-and-a-Half for Overtime Hours.

Defendants failed to pay Plaintiff proper overtime pay under the FLSA and NYLL. Federal and State law requires employers to pay employees one and a half times their regular rate of pay for hours worked in excess of forty in a given week. See Elvey, 2019 WL 3937126, at *8; see also 29 U.S.C. § 207; NYLL § 663.1. Plaintiff was an employee of Defendants. Her pled facts and declaration include an outline of her usual weekly schedule (Second Amend Compl. ¶¶ 25-26, Decl. ¶¶ 9-15) and the schedule in turn provides that Plaintiff routinely worked more than 40 hours a week. Defendants failed to pay her time-and-a-half for her overtime hours, which was a violation of the FLSA and NYLL. See Compl. ¶ 43, Decl. ¶25. Accordingly, Plaintiff has established her claim for overtime pay under the FLSA and NYLL.

### c. Defendants Violated the FLSA and NYLL by Not Paying the Required Minimum Wage.

Defendants failed to pay Plaintiff the required minimum wage under the NYLL throughout her employment. Starting on December 31, 2019, all New York City employers were required to

pay employees a minimum wage of $15.00 per hour. NYCRR 12, § 142-2.2. That rate increased to $16.00 on January 1, 2024, $16.50 on January 1, 2025, and $17.00 on January 1, 2026. NYLL § 652(d)(1)(a).  For the period within the statute of limitations, Plaintiff became an employee of Defendants in February 2020 and continues to work there, and as such throughout her employment Defendants were required to pay her at a rate of no less than $15.00 per hour. However, Defendants instead paid Plaintiff a piece rate per item she showed and she earned an average of $200 per week. Given that she worked 60 hours per week for most of her employment, Defendants paid Plaintiff an effective rate of $3.33, well below the minimum wage. Accordingly, Plaintiff has established her minimum wage claim under the NYLL. (Second Amend Compl. ¶ 43; Decl. ¶ 25.)

### d. Defendants Violated the NYLL by Failing to Pay Plaintiff Timely.

Defendants violated NYLL § 191 by paying by failing to pay Plaintiff weekly. "Under the NYLL, employers must pay manual workers weekly and no later than seven days after the end of the week in which the wages were earned." Garzon v. Bldg. Servs. Inc., No. 24 CIV. 5429 (JLR) (RFT), 2025 WL 1871171, at *9 (S.D.N.Y. July 2, 2025), report and recommendation adopted, No. 1:24-CV-05429 (JLR), 2025 WL 2062741 (S.D.N.Y. July 23, 2025). "The NYLL defines a manual worker as a "mechanic, workingman or laborer." Tzilin v. Jimmy G Constr. Corp., No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *12 (E.D.N.Y. Sept. 26, 2024) (quoting NYLL § 190(4). The vast majority of federal court have determined that NYLL § 191 contains a private right of action allowing the plaintiff to recover her damages including liquidated damages. Tzilin, 2024 WL 4309775, at *13 (citing cases). While a 2025 amendment to NYLL § 198 limited the applicability of liquidated damages in untimely payment situations, it did so only to where "the employer paid the employee wages on a regular payday, no less frequently than semi-monthly. NYLL § 198(1-a).

Plaintiff is entitled to assert a NYLL § 191 claim. Plaintiff sowed articles of clothing and therefore performed manual labor. Further, Defendants paid Plaintiff irregularly and never paid her weekly or even semi-monthly. Indeed, Defendants often paid her every three weeks and withheld her pay for months. (Second Amend. Compl. ¶¶ 44–45; Decl. ¶¶ 27–28). Defendants therefore failed to timely pay Plaintiff weekly on a regular payday and violated NYLL § 191.

### e. Wage Theft Prevention Act Violations Claim

Plaintiff has alleged sufficient facts to state valid claims for failure to provide proper notice of pay and pay stubs. NYLL §195(3) requires employers to supply employees with pay stubs ("furnish each employee with a statement with every payment of wages"). These pay stubs must accurately record (among other required information) the number of regular and overtime hours worked. See id. Defendants failed to provide any notice statement and paid Plaintiff primarily in cash with no associated pay stubs. NYLL §195(1) requires employers to provide a notice at the time of hiring which contains, among other information, the employee's rate of pay, the name of the employer, and the employee's regular pay day. Suarez Castaneda v. F&R Cleaning Servs. Corp., No. 17-CV-7603 (SJ)(PK), 2019 WL 5694118, at *10 (E.D.N.Y. Mar. 15, 2019), report and recommendation adopted, No. 17-CV-7603 (SJ) (PK), 2019 WL 5693768 (E.D.N.Y. July 8, 2019). Defendants never provided Plaintiff with this required notice. Second Amend. Compl. ¶¶ 54–55; Decl. ¶ 37. Further, Plaintiff has indicated that by not receiving these documents, Defendants deprived her of information regarding her hours and pay, which prevented her from properly advocating for herself. Second Amend. Compl. ¶¶ 57-58. Plaintiff therefore has standing to assert these claims. Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (citing Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 302 (2d Cir. 2024)).

### f. Lo Sewing and SL Sewing are an Integrated Enterprise or in the Alternative, SL Sewing is a Successor to Lo

**Sewing and Therefore Both Corporations are Jointly and Severally Liable.**

Both Lo Sewing and SL Sewing are jointly and severally liable. The Court should consider Lo Sewing and SL Sewing a single integrated enterprise for the purposes of the FLSA and NYLL. A "single integrated enterprise" is a theory of employer liability which holds that two nominally separate entities are part of a single integrated enterprise. See Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 198 (2d Cir. 2005). In such circumstances, liability will not only be imposed on the nominal employer but also on another entity comprising part of the single integrated employer. Id.; see also Kew Sing Yap v. Mooncake Foods, Inc., 146 F.Supp.3d 552, 557 (S.D.N.Y. 2015). A single integrated enterprise exists where employers share "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Galicia v. Ice Cream House on Bedford Ave LLC, No. 16-CV-6738 (CBA)(PK), 2017 WL 6733985, at *2 (E.D.N.Y. Oct. 17, 2017), report and recommendation adopted, No. 16CV6738CBAPK, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017). Here, the Corporate Defendants' operations are interrelated, share common management, share employees, and are centrally controlled and/or owned by the Individual Defendants. In the operative Complaint, Plaintiff alleges that she and other employees worked for both entities performing the same work from the same locations, and were supervised by the same individual. (Second Amen. Compl. ¶¶ 19–20, 22–35; Decl. ¶ 5.) These allegations are therefore sufficient to establish integrated enterprise liability See Chica v. Shallu Constr. Corp., 2022 WL 970744, at *5 (E.D.N.Y. Mar. 31, 2022) ("[P]laintiffs have sufficiently pleaded that the operations of the various corporate defendants were interrelated: plaintiffs alleged that they performed tasks on construction sites on behalf of all three corporate defendants.").

15

In the alternative, SL Sewing is a successor to Lo Sewing.  In determining successor liability, courts in this Circuit "focus[ ] on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." <u>Bautista v. Beyond Thai Kitchen, Inc.</u>, No. 14-cv-4335, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015). Factors considered include  "(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product." <u>Id.</u> at *5.

SL Sewing is essentially identical to Lo Sewing and therefore a successor. SL Sewing and Lo Sewing are run and managed by the same individuals and therefore SL Sewing was on notice of the FLSA and NYLL violations alleged here. Further, Lo Sewing was dissolved and therefore cannot provide relief. Finally, there is a substantial continuity between the businesses. Both use the same factory and equipment, are operated by the same people, use the same workforce, and employ the same unlawful pay practices. (Second Amen. Compl. ¶¶ 19–20, 22–35; Decl. ¶ 5.) SL Sewing is therefore a successor of Lo Sewing and liable for all violations under the FLSA and NYLL.

**g.  Individual Defendants are Individually Liable under the FLSA and NYLL, and Defendants are Jointly and Severally Liable.**

All Defendants are jointly and severally liable under the FLSA and NYLL.  Under those statutes, to determine whether someone is an employer, courts look at the economic reality and

review the following factors: "whether the alleged employer: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Elvey, 2019 WL 3937126, at *7.  Defendant Abouhamra is, upon information and belief, the owner and/or manager of Lo Sewing and SL Sewing. (Second Amen. Compl. ¶¶ 37-38; Decl. ¶¶ 4-6.) Both Individual Defendants exercised their authority in a variety of ways. Both assigned Plaintiff work and Defendant Abouhamra set her rate of pay and hours. Defendant Gallegos hired Plaintiff and oversaw her work, including assigning her work tasks, and Defendant Abouhamra paid Plaintiff. These facts easily establish that Defendants are joint employers. Elvey, 2019 WL 3937126, at *7. Individual Defendants are therefore jointly and severally liable with the Corporate Defendant for all of Plaintiff's claims. Id.

### IV. Damages

Plaintiff is entitled to damages for Defendants' unlawful conduct, not including attorneys' fees, costs, and applicable interest. See the damages calculations attached to the Taubenfeld Decl. attached as **Exhibit 4**.

### a. Damages for Minimum Wage Violations

Plaintiff is entitled to minimum wage damages. Since she returned to work in February 2020 until April 2024 – excluding the time period between March 22, 2020 when New York State shut down most businesses because of COVID-19 under Executive Order No. 202.8 (EO 202.8) and August 1, 2020 when she came back to work – Plaintiff's usual work schedule was six days per week for 10 hours a day for 60 hours. Those hours were reduced in April 2024 to 57.75 because Plaintiff began working 10.5 hours each weekday but only worked on Saturday and Sunday once

a month.[3] Plaintiff's schedule then fluctuated as she was out of work for a number of months and then worked sporadic hours.[4] **See, Exhibit 4.** Defendants generally paid Plaintiff $200 a week. Plaintiff is therefore owed $139,719.14 in minimum wage damages.

### b.   Damages for Overtime Violations

Plaintiff is also entitled to overtime pay. Defendants paid Plaintiff per piece for each item she sowed and did not pay her overtime pay. (Second Amend Compl. ¶ 43; Decl. ¶ 25.) This policy violated the FLSA and NYLL, which require that an employee be paid time-and-a-half for each hour in excess of 40. Pest v. Bridal Works of New York, Inc., 268 F. Supp. 3d 413, 428 (E.D.N.Y. 2017) (citing 29 C.F.R. § 778.109 and NYCRR 12, § 142–2.16). As noted above, Plaintiff generally worked well in excess of 40 hours a week, but Defendants usually paid her $200 for the entire week. Plaintiff is therefore owed $106,459.99 in unpaid overtime damages.  **See, Exhibit 4.**

### c.   Damages for Untimely Payments

Plaintiff is entitled to liquidated damages for her untimely wage payments. Anzures v. Maredin Rest. Corp., No. 22-CV-2798-EK-JRC, 2024 WL 1376812, at *15 (E.D.N.Y. Jan. 24, 2024), report and recommendation adopted, No. 22-CV-2798(EK)(JRC), 2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024). Defendants never paid Plaintiff weekly, and for the purposes of calculating untimely payment damages for this motion, Plaintiff will assume that she was paid biweekly.

Defendants paid Plaintiff an average of $200 per week. Plaintiff worked a total of 298 weeks during this period. Because Plaintiff was paid late every other week, she was paid late for

---

[3] The formula is 10.5*5+(10.5*2*(1/4)) = 57.75.
[4] Plaintiff worked fewer hours during the Christmas season. Plaintiff has reduced one week of damages to account for that reduced work.

half of her weeks, for a total of 149 weeks. Id. at *15 n. 12 (awarding damages for half the weeks). Plaintiff is therefore owed $29,704.64 ($199.36*149) for her untimely wage payments.

### d. Liquidated Damages

The NYLL requires "liquidated damages equal to one hundred percent of the total amount of the wages found to be due," unless the employer "proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 198(1-a); see also id. § 663(1).[5]  Defendants have the burden of showing that liquidated damages are not appropriate, which they cannot meet because they have defaulted. Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011).  Plaintiff therefore seeks liquidated damages in the amount of $246,179.13.

### e. Damages for Wage Notice and Paystub Violations

The remedy for violation of the pay stub law (NYLL section 195.3) is listed in NYLL section 198.1-d. A claimant under that statute "shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." NYLL § 198.1-d. Plaintiff is also entitled to an additional $5,000 in damages under NYLL § 198.1-b, due to Defendants' failure to provide her with a wage notice within ten business days of her first day of employment. Suarez, 2019 WL 5694118, at *10. Plaintiff worked for Defendants for over 6 years and therefore seeks the maximum of $10,000 total in damages for violations of the Wage Theft Prevention Act.

### f. Pre-Judgment Interest

Plaintiffs additionally seek an award of prejudgment interest under the NYLL on their

---

[5] The FLSA provides for liquidated damages of the same amount, but plaintiffs cannot collect on liquidated damages for both. Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

unpaid wages through the date of final judgment. See Fermin 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015). New York law provides for prejudgment interest at a rate of nine percent per annum. See N.Y.C.P.L.R. § 5004. Courts typically calculate interest from the midpoint of the relevant NYLL claim period. See Gortat v. Capala Bros., 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013). For cases where damages were incurred at various times, the court may compute interest either upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date. N.Y. C.P.L.R. § 5001(b). Courts have discretion to determine a reasonable intermediate date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date. Elghourab v. Vista JFK, LLC, No. 1:17-cv-911 (ARR), 2019 WL 2431905, at *12 (E.D.N.Y. June 11, 2019).

Here the midpoint of Plaintiff's employment is April 30, 2023. The number of days between the midpoint and today is 1,171. Plaintiff owed $246,179.13 in damages that permit prejudgment interest. Daily prejudgment interest is therefore $60.70.

### g. Post-Judgment Interest.

Plaintiff is also entitled to post-judgment interest.  Under 28 U.S.C. § 1961, prejudgment interest is required in all civil cases.  Brito v. Marina's Bakery Corp., No. 19CV00828KAMMMH, 2022 WL 875099, at *27 (E.D.N.Y. Mar. 24, 2022).  Plaintiff is therefore entitled to post-judgment "at the federal statutory rate until the judgment is paid in full."  Id.

### h. The Court Should Increase the Judgment by 15% Should Defendants Not Timely Pay the Judgment.

The Court should include in the judgment a provision that the judgment automatically increases by 15% if it remains unpaid. Under NYLL § 198(4), if the "total judgment remains unpaid ninety days following judgment or ninety days after the

expiration of time to appeal and no appeal is filed (whichever is later), for the total amount of judgment to automatically increase by 15%." Lopez v. Royal Thai Plus, LLC, No. 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *14 (E.D.N.Y. Feb. 6, 2018) (quoting NYLL § 198(4) report and recommendation adopted, No. 16CV4028NGGSJB, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). Accordingly, the Court should include such a provision in the judgment and allow the judgment to increase should Defendants not timely pay.

### i.   Attorneys' Fees and Costs

Plaintiff is entitled to $6,513 for attorneys' fees and costs. Both the FLSA and NYLL provide for attorneys' fees and costs. Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 151 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)); Torres v. Gristede's Operating Corp., 04 CIV. 3316 PAC, 2012 WL 3878144 (S.D.N.Y. Aug. 6, 2012) aff'd, 12-3336-CV, 2013 WL 2257859 (2d Cir. May 22, 2013) (summary order) citing NYLL §§663 and 198.

To establish their entitlement to attorneys' fees, Plaintiff must show "the reasonableness and the necessity of the hours spent and rates charged." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015). The attorneys' fees requested are reasonable. Mr. Taubenfeld is a partner at Fisher Taubenfeld LLP and bills his work to paying clients at $495 an hour. Mr. Taubenfeld was admitted to the Bar of the State of New York in 2008 and since then has practiced labor and employment law, with a strong focus on wage-and-hour law. Mr. Taubenfeld is a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and has been invited to give CLEs on the FLSA. Taubenfeld Decl. ¶ 35. Mr. Taubenfeld has been designated class counsel in a FLSA case in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (JFB)(AKT) in which the court granted partial summary judgment for Plaintiffs and the class on liability and damages. He has also

21

successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). Plaintiff is requesting an hourly rate of $550 for Mr. Taubenfeld's work.  An hourly rate of $550 is reasonable for experienced FLSA practioners. Santamaria v. Vee Techs., Inc., No. 22-CV-4472 (AS), 2024 WL 3030539, at *3 (S.D.N.Y. June 17, 2024) (awarding $550 to a partner in a FLSA case).  Although courts in this Circuit have often awarded rates lower than $550, those courts often failed to take into inflation when awarding attorneys' fees.  Rubin v. HSBC Bank USA, NA, No. 20-CV-4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025) (determining that given inflation a reasonable hourly rate for a partner ranges between $450-$650).  Accordingly $550 is a reasonable rate.

Mr. Taubenfeld worked 9.4 hours on this case. See Taubenfeld Decl., **Exhibit 5**. These hours were well expended. The firm drafted the various Complaints, discussed the case with Plaintiff, and drafted this motion. The above hours are therefore reasonable given that the case was litigated before Defendants defaulted.  Apolinar v. Glob. Deli & Grocery, Inc., No. 12 CV 3446 RJD VMS, 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (finding 44.93 hours to be a reasonable amount of time to have spent on a FLSA default action). Plaintiffs are seeking to recover $5,170 in attorneys' fees in this matter.

Plaintiffs seek to recover $1,343 in total costs in this case. The requested costs are reasonable. See Taubenfeld Decl., **Exhibit 6**. Costs are comprised of the following:  a) $405 in filing fees; b) $938 in service of process expenses.  These costs were reasonably expended during this litigation and are recoverable. Apolinar, 2013 WL 5408122, at *16 (awarding filing and service fees).

## CONCLUSION

For the foregoing reasons, Plaintiff Alejandra Badillo respectfully requests that this Court enter default judgment against Defendants Lo Sewing, Inc., SL Sewing Inc., Maria Gallegos, and Salim Abouhamra a/k/a Salim Abohamra a/k/a Salim Hamra, jointly and severally, and award:

(1)    Unpaid minimum wages in the amount of $139,719.14;

(2)    Unpaid overtime wages in the amount of $106,459.99;

(3)    NYLL liquidated damages (NYLL-only period) in the amount of $246,179.13;

(4)    NYLL § 195 statutory damages in the amount of $10,000;

(5)    NYLL § 191 untimely-payment damages in the amount of $29,704.64;

(6)    Pre-judgment interest at 9% per annum from April 30, 2023 through the date of judgment;

(7)    Reasonable attorneys' fees and costs totaling $6,513;

(8)    Increase the judgment by 15% if Defendants do not pay within 90 days; and

(9)    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 13, 2026

_/s/ Michael Taubenfeld_____
Michael Taubenfeld
FISHER TAUBENFELD LLP

Elissa Devins
NEW YORK LEGAL ASSISTANCE GROUP

*Attorneys for Plaintiff*

23